IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TRAVIS J. SCHOENHEIT )
 ) No. 3-11-0207
v. )
 )
GENERAL MOTORS, LLC )

TO: Honorable Todd J. Campbell, District Judge

# REPORT AND RECOMMENDATION

By order entered June 6, 2013 (Docket Entry No. 30), the plaintiff's motion for attorney's fees and costs (Docket Entry No. 29) was referred to the Magistrate Judge for a Report and Recommendation.

## I. BACKGROUND

The plaintiff filed this action on March 7, 2011, asserting violations of the Tennessee Motor Vehicle Warranties Act, otherwise known as the Tennessee Lemon Law, Tenn. Code Ann. §§ 55-24-201 et seq., the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2310 et seq., the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-103 et seq., and a claim for breach of warranty under the Tennessee Uniform Commercial Code. Specifically, the plaintiff alleged that the defendant failed to properly repair a 2009 Chevrolet Cobalt, which he purchased on September 4, 2009, for $25,048.90,[1] despite the plaintiff's seeking service repairs on at least seven occasions for various issues relating to the emergency brake, clutch pedal and leaking sunroof.

The defendant filed an answer, denying many of the plaintiff's allegations and asserting affirmative defenses (Docket Entry No. 7). The defendant contended that it complied with the

---

[1] The defendant indicates that the purchase price was $23,107.88. The difference between the two figures is likely taxes, and license, title, and processing fees. See Docket Entry No. 1, at 2, ¶ 6; Docket Entry No. 1-2.

written express limited warranty, that there were no defects in the vehicle, and that the plaintiff was not entitled to the relief sought. See order entered May 9, 2011 (Docket Entry No. 10), at 2. The initial case management conference was held on April 18, 2011, after which initial case management orders were entered on May 9, 2011 (Docket Entry Nos. 10 and 11), inter alia, setting scheduling deadlines for the progression of the case. By order entered May 10, 2011 (Docket Entry No. 12), the trial was scheduled on August 28, 2012. According to the defendant, no depositions were taken in the case although the parties exchanged written discovery.

During a telephone conference with counsel for the parties and the Court held on April 18, 2012, and as reflected in the order entered April 18, 2012 (Docket Entry No. 15), counsel for the parties represented that no dispositive motion would be filed[2] and that they had exchanged settlement proposals and expected to continue settlement discussions. See order entered April 18, 2012 (Docket Entry No. 15). A further telephone conference call was scheduled on May 14, 2012, at which time a settlement conference was scheduled with Magistrate Judge Brown on July 31, 2012. See orders entered May 15, 2012, and May 24, 2012 (Docket Entry Nos. 16 and 17). The parties were not able to reach a settlement at the July 31, 2012 settlement conference. Upon the parties' motion (Docket Entry No. 19), the trial was rescheduled from August 28, 2012, to May 7, 2013, by order entered August 13, 2012 (Docket Entry No. 20).

By letter filed April 22, 2013 (Docket Entry No. 24), the parties notified the Court that they had reached a resolution of the case. By order entered May 6, 2013 (Docket Entry No. 27), the case was dismissed upon the parties' agreed order of dismissal with prejudice. Thereafter, the plaintiff filed his motion for attorney's fees and costs, to which the defendant has responded (Docket Entry

---

[2] At oral argument, counsel for the defendant explained that he did not attempt to dismiss the plaintiff's claims in this case because an attempt to do so in a similar case had not been fruitful. Docket Entry No. 35, at 3. The plaintiff was represented by the same counsel in both cases and the defendant anticipated that plaintiff would raise the same argument in opposition to a motion to dismiss brought on the same grounds.

Nos. 34-35). Upon the defendant's motion for oral argument, a hearing was held on August 12, 2013.

## II. PLAINTIFF'S REQUEST FOR FEES AND DEFENDANT'S OPPOSITION

The plaintiff seeks an award of $12,812.00 in attorney's fees and costs, citing to the "fee shifting statutes" under which this case was brought, specifically the Magnuson-Moss Warranty Act. See Docket Entry No. 29-1, at 3. According to the plaintiff, the terms of the settlement agreement between the parties provided that the defendant pay the plaintiff's expert's damages figure of $5,816.00, see Docket Entry No. 29-6, at 3, in addition to plaintiff's reasonable attorney's fees and costs. The plaintiff's explains that Amy Bennecoff, his lead out-of-town counsel, and her paralegals spent 42.8 hours at a reduced rate of $200.00 and $110.00 per hour, respectively, for a total of $8,082.00, and that Michael J. McNulty, the plaintiff's local counsel, spent 21.9 hours at a reduced rate of $200.00 per hour, for a total of $4,380.00.[3] See Docket Entry Nos. 29-2 through 29-5. The plaintiff is only seeking the $350.00 filing fee as costs, and is not seeking reimbursement for any other costs, except the expert fee, addressed infra.

The defendant contests the plaintiff's premise that the defendant agreed to pay the plaintiff's reasonable attorney's fees. While the agreed order of dismissal with prejudice provides that the plaintiff had 30 days to file a motion for an award of attorney's fees, the defendant maintains that it is only responsible for "court costs."

It is unclear to what "costs" the parties referred in the agreed order of dismissal, which specifically provided that "[c]osts are assessed against defendant for which execution may issue if necessary." Docket Entry No. 27. Since no costs are assessed by the Court or the Clerk in this Court after entry of judgment, it may be that such language is simple surplusage. However, the parties

---

[3] Ms. Bennecoff attests that her billing rate for consumer warranty litigation is $265.00 and that the paralegals in her firm generally bill between $115.00 and $165.00 per hour. Docket Entry No. 29-4, at 7-8, ¶¶ 30-31. Mr. McNulty attests that his normal billing rate for consumer credit litigation is $225.00 per hour. Docket Entry No. 29-5, at 4, ¶ 19.

appear to agree that the costs for filing the lawsuit, i.e., the $350.00 filing fee that the plaintiff had to pay, is properly "assessable" against the defendant.

In addition, the defendant argues that the plaintiff's motion for an award of attorney's fees is excessive and unreasonable because the amount sought is over twice the amount of the plaintiff's damages and, when combined with the $5,816.00, the total amount sought by the plaintiff is only about $5,000.00 less than the total price of the car that the plaintiff drove for over four years. The defendant also maintains that the plaintiff unnecessarily increased the costs of litigation. The defendant describes the impediment to settlement to be the "unreasonable demand for attorney's fees in light of the relatively small damages claim." Docket Entry No. 35, at 4. It is the defendant's position that had this case been properly filed in the General Sessions Court for Davidson County,[4] the case would have been concluded within two months, saving substantial attorney's fees.

The defendant notes that an award of attorneys' fees is not mandatory and under the Magnuson-Moss Warranty Act, the Tennessee Motor Vehicle Warranties Act, or the Tennessee Consumer Protection Act such fees must be reasonable. It is the defendant's position that a fee of approximately $13,000.00 is excessive when compared to the damages claim of $5,816.00. In addition, the defendant points out that the plaintiff's expert, Scot Turner, based his calculation of damages on a breach of warranty standard and that the plaintiff is not entitled to an award of attorneys' fees for such a claim.

The defendant specifically sets forth $720.00 comprising duplicative hours for local counsel and $962.00 comprising duplicative hours for out-of-town counsel, and maintains that time spent "in pursuit of" plaintiff's motion for attorney's fees are not properly compensable. Docket Entry No. 35, at 10. The defendant also adamantly opposes any costs or expenses associated with the plaintiff's expert, who did not examine or test drive the car, citing five cases in which he was disqualified as an expert. See id. at 12-15.

---

[4] It is the defendant's position that the plaintiff did not meet the jurisdictional limit of $75,000.00 to maintain a diversity case in this Court or the $50,000.00 jurisdictional amount under the Magnuson-Moss Warranty Act.

While the defendant does not challenge plaintiff's counsel's hourly rate or counsels' expertise, the defendant does challenge what it believes to be duplication of effort and the need for two attorneys and over six paralegals working simultaneously on the case.

During oral argument, plaintiff's counsel emphasized that awards of fees do not always correlate with the amount in controversy or the damages ultimately awarded since fees in remedial cases such as consumer cases under the Magnuson-Moss Warranty Act often do not always correlate with each other, citing the Michigan Supreme Court in Jordan v. Transnational Motors, Inc., 537 N.W.2d 471 (Mich. 1995). See also Docket Entry No. 29-1, at 4. Essentially, the plaintiff argued that the remedial purpose of the statute would be thwarted if attorneys' fees are only based on the amount in controversy. Plaintiff's counsel also recounted the settlement discussions between the parties, beginning in February of 2011, which included attorneys' fees well below what the plaintiff now seeks.

### III. DISCUSSION

In determining a reasonable amount of an attorneys' fee award, the Court will begin by considering the lodestar amount, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Isabel v. City of Memphis, 404 F.3d 404, 415 (6th Cir. 2005). The fees awarded must be reasonable and "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004); Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 349 (6th Cir. 2000); Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999), citing Blum v. Stenson, 465 U.S. 886, 893, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). When a plaintiff has obtained excellent results, his counsel is entitled to a "full compensatory fee," Hensley, 461 U.S. at 435, and a reduction in attorneys fees is appropriate only in "rare and exceptional cases where specific evidence requires it." Isabel, 404 F.3d at 416.

5

In determining the lodestar fee and/or adjustments to the lodestar amount, the Court must consider the following factors, as first enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974): (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment due to acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Blanchard v. Bergeron, 489 U.S. 87, 91 n.5, 109 S.Ct. 39, 103 L.Ed.2d 67 (1989); Hensley, 461 U.S. at 430 n.4; Isabel, 404 F.3d at 415; Paschal v. Flagstar Bank, 297 F.3d 431, 435 (6th Cir. 2002); Adcock-Ladd, 227 F.3d at 349 & n.8. The most important factor in determining the reasonableness of an attorneys' fees is the degree of success obtained. Hensley, 461 U.S. at 436; Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); Isabel, 404 F.3d at 416.

(1)  The time and labor required

The defendant complains that a portion of the award that the plaintiff seeks reflects duplication of time, especially communications, primarily by email, between local counsel and out-of-town counsel and between out-of-town counsel and her several paralegals,[5] including directives and status reports. Plaintiff's counsel argues that adequate preparation requires collaboration among counsel. See Rodriquez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998).[6] While there is no barrier to the plaintiff's retaining out-town-counsel, who must then obtain local counsel, special efforts should be taken to reduce the amount of duplicative work. It also appears from counsels' invoices that attorney's fees may have been charged for the simple task of e-mailing filings

---

[5] As the defendant points out, the plaintiff did not clearly specify paralegal time, but paralegal time can be reasonably inferred by the hourly rate set forth.

[6] However, the First Circuit was concerned about not rewarding defendants for the ferocity of their "Stalingrad defense." There is absolutely no hint of the utilization of such tactics in this case.

to the Court, which should be considered a matter of overhead, not attorney work for which fees should be awarded.

The Court agrees that the amount sought by the plaintiff should be reduced by $1,292.00 to reflect duplication of effort, which is the amount requested by the defendant less $390.00 for expert fees, which will be addressed <u>infra.</u> Of the $1,292.00, $720.00 is attributable to local counsel and $962.00 is attributable to out-of-town counsel.

(2) The novelty and difficulty of questions presented in this case and necessary skill

While the claims in this case are not run-of-the-mill claims and require some specialized knowledge, plaintiff's counsel clearly have that specialized knowledge and experience.

(3) The preclusion of other cases

There is no suggestion that plaintiff's counsel were precluded from taking other cases during the pendency of this case.

(4) Fees

Although plaintiff's counsel did not provide any affidavits or declarations from other attorneys who have represented parties in similar cases, the defendant raises no objection to plaintiff's attorneys' hourly rates--nor should they. The attorneys are requesting $200.00 per hour and $110.00 per hour for paralegals. The Court finds that these rates, which have been reduced from their normal hourly rates, are clearly reasonable.

(5) Time limitations

There is no indication that the plaintiff placed any particular time limitations on his counsel.

(6) The amount involved and results obtained

This factor is the major sticking point for the defendant. The defendant chafes at the prospect of a fee award that is more than double the amount of the settlement, especially when the amount of the settlement was fairly minimal and much less than the jurisdictional amount for diversity jurisdiction to pursue claims under the Tennessee statutes at issue or the damages required under the Magnuson-Moss Warranty Act.

It is worth noting that this case does not present a situation in which the plaintiff asserted multiple claims but prevailed on few or just one claim. Even though the plaintiff asserted several causes of action, the facts underlying each were the same. Although there is no requirement that the fees be proportional to the damages obtained, whether or not the amount of the settlement (or verdict) reflected "an excellent result" is a permissible factor to consider. Waldo v. Consumer Energy Co., 726 F.3d 802, 825 & n.5 (6th Cir. 2013). See also Hensley, 461 U.S. at 435; Isabel, 404 F.3d at 416. The plaintiff describes recovery of his "full expert number" as an "excellent result." While the plaintiff may be correct that the "full expert number" is the most he could expect to obtain, it is clearly far less than trebled damages and the "'full purchase price,' collateral charges, finance charges, incidental and consequential damages" that he sought in his complaint. Docket Entry No. 1, at 11.

The Court will balance the fact that the plaintiff brought this consumer action under remedial statutes and the fact that the plaintiff achieved a minimal amount in the end. To account for the level of success, while still acknowledging the type of case, the plaintiff's attorneys' fees, reduced as addressed in (1) above, should be further reduced by ten percent. However, the filing fee, expert cost, and fees for preparation of the fee motion shall not be included in the amount to which the ten percent reduction is applied.

(7) Experience, reputation and ability of counsel

The defendant does not challenge plaintiff's counsel's experience, reputation and ability. They are both experienced in the field and the attorneys in the plaintiff's out-of-town law firm have been touted by other courts for their experience. See Docket Entry No. 29-1, at 7; Docket Entry No. 29-4; and Docket Entry No. 29-5.

(8) Undesirability of the case

This factor is not relevant, particularly because plaintiff's counsel specializes in such consumer litigation.

(9) The length and nature of the plaintiff's relationship with counsel

There is no information about this factor before the Court, nor does it appear to be a relevant consideration.

(10)    Awards in similar cases

Although plaintiff's counsel has indicated that they recounted awards obtained in similar cases, see Docket Entry No. 29-1, the plaintiff cited those cases for the purpose of establishing a reasonable hourly rate. The plaintiff did not include a total attorneys' fee award made in those cases and did not specify which cases dealt with the Magnuson-Moss Warranty Act or state lemon laws. Although it is clear that plaintiffs' counsel have been awarded attorneys' fees in consumer litigation, the parties provided little information from which the Court can compare any specific cases to this litigation.[7] However, the Court notes that in a similar case with the same lawyers for the parties in which the plaintiff brought claims under the same statutes, this Court awarded the plaintiff $13,554.82 in attorneys fees and costs when the plaintiff had requested an award of $14,650.50. See Carver v. General Motors, 3-10-1096 (Sept. 19, 2013) (Sharp, J.).

In addition to consideration of the Johnson factors specifically addressed above, the issue of payment for the plaintiff's expert remains. The defendant argues that the amount of $390.00 provided to the plaintiff's expert should be excluded because his expert opinion has been excluded in other cases. See Docket Entry No. 35, at 12-16. However, the circumstances in this case militate in favor of allowing the $390.00 paid to Scot Turner. First, it is reasonable that plaintiff's counsel would confer with a mechanic or someone with more expertise than they to formulate a damages amount, whether or not that person becomes a testifying expert or just serves as a consulting expert. Second, the amount of $390.00 is not unreasonable, even if all Mr. Turner did was consult the Kelly Blue Book and review the repair orders for the car. Third, and perhaps most importantly, the figure at which Mr. Turner arrived was the amount the defendant ultimately agreed to pay to settle this

---

[7] It would have been helpful had the plaintiff cited similar litigation in which attorneys' fees in amounts much greater than the amount of the settlement or verdict were awarded.

case.[8]  For much the same reasons, the Court in Carver awarded costs for the plaintiff's expert who had been challenged for much the same reasons the defendant challenges the plaintiff's entitlement to Mr. Turner's costs in this case.

The defendant argues that time spent preparing the fee request itself cannot be included in an attorney's fee award, citing Tennessee state cases.  See Docket Entry No. 35, at 6-7.  While that may be true in Tennessee, the general rule in federal litigation, as enunciated by the Sixth Circuit is that, absent unusual circumstances, recovery for preparing a fee application should not exceed three (3) percent of the total hours in the underlying case if there were no trial.  Coulter v. Tennessee, 805 F.2d 146, 152 (6th Cir. 1986), cert. denied, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987).  See also Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 620-21 (6th Cir. 2007).

Once the fees are reduced as addressed above, the amount of $540.00,[9] as requested by the plaintiff, while certainly not unreasonable in a vacuum, exceeds the three percent limitation prescribed by Coulter.  Therefore, the fees for preparing the motion for attorney's fees and costs cannot exceed $285.93.

Finally, there is no dispute about whether the $350.00 filing fee should be included in an award of fees and costs.

### IV.  FINAL CALCULATIONS

| | | |
|---|---|---|
| Total fee request: | | $12,812.00 ($8,082.00 + $4730.00) |
| Less Duplicative Fees: | - | $1,292.00 ($572.00 + $720.00) |
| Sub-Total: | $11,520.00 | |
| Less Expert Fee: | - | $390.00 |

---

[8] Without explanation, the amount paid to Mr. Turner was amongst the attorney's fees listed in out-of-town counsel's listing of fees.  Clearly money paid to Mr. Turner is not within the ambit of attorneys' fees and is more akin to costs or expenses than attorneys' fees.

[9] The amount of $540.00 reflects the last seven items listed in Ms. Bennecoff's invoice.  See Docket Entry No. 29-2.

| | | | |
|---|---|---|---|
| Less Requested Fees to Prepare Motion: | | - | $540.00 |
| Sub-Total: | $10,590.00 | | |
| Less 10% Reduction: | | - | $1,059.00 |
| Sub-Total: | $9,531.00 | | |
| Add Filing Fee: | | + | $350.00 |
| Add Expert Fee: | | + | $390.00 |
| Add Fees to Prepare Motion: | | + | $285.93 |
| (3% of $9,531.00) | | | |
| Total Fees & Costs to be Awarded: | $10,556.93[10] | | |

## RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that:

1.  The plaintiff's motion for attorney's fees and costs (Docket Entry No. 29) be GRANTED; and

2.  The plaintiff be awarded a total of $10,556.93 in fees and costs.

Respectfully Submitted,

*[signature]*
JULIET GRIFFIN
United States Magistrate Judge

---

[10] The filing fee, expert fee and fees related to preparing the motion were deducted so that the ten percent reduction would not apply to those costs and fees, and then those costs and fees were added back into the amount reflecting the reduced fees.